# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| GERALD NUCKOLLS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **Case No. 18-CV-0288-TCK-CDL** |
| | ) | |
| SCOTT CROW,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

This matter is before the Court on the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. 1) filed by Petitioner Gerald Nuckolls and on Nuckolls's motion for an evidentiary hearing (Dkt, 18). Nuckolls seeks federal habeas relief from the judgments and sentences entered against him in the District Court of Tulsa County, Case No. CF-2014-4543, alleging that trial errors and prosecutorial misconduct deprived him of his constitutional right to a fair trial and that trial counsel's deficient and prejudicial performance deprived him of his constitutional right to the effective assistance of counsel. For the reasons that follow, the Court denies the motion for an evidentiary hearing and denies the petition for writ of habeas corpus.

## BACKGROUND

In October 2015, Nuckolls was tried by a jury on charges that he committed crimes of sexual battery against A.A. (count one) and indecent exposure in A.A.'s presence (count two) on September 16, 2014, and that he committed crimes of sexual battery against J.T. (count five) and

---

[1] Nuckolls initially identified the State of Oklahoma or Joe Allbaugh, the former director of the Oklahoma Department of Corrections (ODOC) as respondents in this action. Pursuant to Fed. R. Civ. P. 25(d), the ODOC's current director, Scott Crow, is substituted as party respondent. The Clerk of Court shall note this substitution on the record.

indecent exposure in J.T.'s presence (count six) on March 9, 2014.[2]  Dkt. 12-1, Original Record (O.R.) vol. 1, at 65-66; Dkt. 12-7, Tr. Trial vol. 1, at 1, 12-13.[3]  The State presented evidence at trial that the crimes occurred when Nuckolls encountered A.A. and J.T. while he was on duty as a Tulsa County Sheriff's deputy.

## I.     Encounter with A.A.

A.A. testified that Nuckolls arrived at her home in North Tulsa sometime after 3 a.m. on September 16, 2014, after L.G., a woman who occasionally stayed with A.A., called 911 "for no reason."  Dkt. 12-8, Tr. Trial vol. 2, at 36-44, 70.  L.G. and her boyfriend, Shannon On-The-Hill, were helping A.A. pack her belongings because A.A. was moving.  Dkt. 12-8, Tr. Trial vol. 2, at 37-41.  When Nuckolls arrived, A.A. and Shannon were in A.A.'s garage moving boxes.  Dkt. 12-8, Tr. Trial vol. 2, at 40-44.  Shannon left the garage and walked toward Nuckolls' vehicle, and A.A. left the garage and went into her house through the back door.  Dkt. 12-8, Tr. Trial vol. 2, at 42.  Nuckolls and Shannon knocked on the front door, A.A. opened the door, and Nuckolls "barged in."  Dkt. 12-8, Tr. Trial vol. 2, at 42-44.  Nuckolls explained that someone had made 911 hang-up calls, told everyone to step outside onto the porch, and took L.G. to his vehicle where they remained for about 15 minutes.  Dkt. 12-8, Tr. Trial vol. 2, at 45-46.  Nuckolls then left L.G. in his vehicle, approached Shannon and A.A., both of whom were sitting on the porch, in an "agitated" and "angry" manner, accused Shannon of being a car thief and drug dealer, and suggested that A.A.'s car was a stolen vehicle because it had a temporary tag.  Dkt. 12-8, Tr. Trial

---

[2] Two additional charges alleging Nuckolls committed sexual battery against L.G. (count 3) and outraging public decency in A.A.'s presence (count 4) were dismissed at the preliminary hearing on the State's motion.  Dkt. 12-1, O.R. vol. 1, at 45-46, 65-66; Dkt. 12-3, Tr. Preliminary Hr'g, at 3-4.  While both parties' pleadings refer to all three adult women by their full names, portions of the state court record refer to the women only by their initials.  For ease of discussion, the Court will likewise refer to all three women only by their initials.

[3] Unless otherwise noted, the Court's citations refer to the CM/ECF header page numbers.

vol. 2, at 47. As A.A. was retrieving documents from the glove box to prove she owned her car, Nuckolls accused A.A. of making methamphetamine in the garage and using drugs in her house and told her if she turned over the drugs she would not get in trouble because he only wanted to arrest Shannon. Dkt. 12-8, Tr. Trial vol. 2, at 47-48. A.A. denied making or using drugs and permitted Nuckolls to search her house and garage. Dkt. 12-8, Tr. Trial vol. 2, at 49-54.

While Nuckolls searched the house, he commented more than once that A.A. was "a pretty girl" and suggested that A.A. should not live in North Tulsa but should stay in South Tulsa where he lived. Dkt. 12-8, Tr. Trial vol. 2, at 51-53. On the way to the garage, Nuckolls told A.A. that he had "to take a piss real quick," and A.A. briefly turned away but then turned back around because she suspected Nuckolls might try to plant drug evidence. Dkt. 12-8, Tr. Trial vol. 2, at 54-55. A.A. did not see or hear Nuckolls urinate. Dkt. 12-8, Tr. Trial vol. 2, at 55. While Nuckolls searched the garage, A.A. made small talk with Nuckolls, and, at some point, Nuckolls asked about A.A.'s tattoos. Dkt. 12-8, Tr. Trial vol. 2, at 56-58. When A.A. indicated that she had a tattoo on her torso near her ribs, Nuckolls "reached out," grabbed the elastic top of A.A.'s sundress, pinching her breast in the process, "made a snapping motion" with the dress, and said, "you're not even wearing a bra, are you." Dkt. 12-8, Tr. Trial vol. 2, at 58-59. A.A. did not perceive the breast pinch as an "accident." Dkt. 12-8, Tr. Trial vol. 2, at 59. A.A. testified that just before Nuckolls pinched her breast, she had pulled down her top, slightly, to expose her tattoo but that she had not exposed her breast. Dkt. 12-8, Tr. Trial vol. 2, at 59-61. A.A. testified that as she and Nuckolls were leaving the garage Nuckolls said, "hold on a sec, do you want to see this real quick." Dkt. 12-8, Tr. Trial vol. 2, at 61. When A.A. turned around, she saw that Nuckolls had unzipped his pants and that he had his penis exposed through the open zipper. Dkt. 12-8, Tr. Trial vol. 2, at 61-63. A.A. was offended and "intimidated" because she was alone in the barn with Nuckolls. Dkt.

12-8, Tr. Trial vol. 2, at 63.  When A.A. turned around to walk out of the garage, Nuckolls said, "hold on a second, my dick's still hard."  Dkt. 12-8, Tr. Trial vol. 2, at 64.  A.A. kept walking. Dkt. 12-8, Tr. Trial vol. 2, at 64.

As A.A. walked from the garage to the house, she told everyone, including Nuckolls, to leave her property.  Dkt. 12-8, Tr. Trial vol. 2, at 64, 68-69.  Nuckolls told A.A. he would come back by her house at eight o'clock, after he was off-duty, to check on her and make sure that L.G. and Shannon were gone.  Dkt. 12-8, Tr. Trial vol. 2, at 69.  Nuckolls left, but proceeded to drive up and down the dead-end road leading to A.A.'s house at least four times.  Dkt. 12-8, Tr. Trial vol. 2, at 69-73.  A.A. testified she did not feel safe staying at her house so she loaded some belongings in her car, locked her door, and drove to a friend's house, leaving L.G. and Shannon standing by Shannon's car.  Dkt. 12-8, Tr. Trial vol. 2, at 73-75.  A.A. told her friend about the encounter with Nuckolls, and A.A.'s friend reported the incident to Chris Yerton, a Tulsa County Sheriff's deputy that A.A.'s friend knew and trusted.  Dkt. 12-8, Tr. Trial vol. 2, at 152-58.  A.A. briefly spoke to Yerton on the phone and, later that afternoon, A.A. went to the Tulsa County Sheriff's office and spoke with two detectives about the encounter.  Dkt. 12-8, Tr. Trial vol. 2, at 95, 157-59, 168.

## II.   Encounter with J.T.

J.T. testified at trial that she had an encounter with Nuckolls on March 9, 2014, near the intersection of 171st and Yale.  Dkt. 12-8, Tr. Trial vol. 2, at 191, 197-205.  J.T. testified that she had been arguing with her husband that day, on and off, while she worked a double shift at a fast-food restaurant, that she drank some vodka after she left work around 11 p.m. that night, and that she was parked near the intersection with her hazard lights on because she was "tipsy" and "emotional" and did not want to go to her home which was about one mile away.  Dkt. 12-8, Tr.

Trial vol. 2, at 192-99, 201-03.  J.T. testified that she recalled talking to a man and a woman in an SUV who saw that she was upset and told her that they would call 911 to get her help.  Dkt. 12-8, Tr. Trial vol. 2, at 200-01.  J.T. "[v]aguely" recalled telling the couple that she had been in a fight with her husband, that she had been assaulted with a hammer, and that she "wanted to end it."  Dkt. 12-8, Tr. Trial vol. 2, at 202.

J.T. identified Nuckolls as a Tulsa County Sheriff's officer who responded to the 911 call.  Dkt. 12-8, Tr. Trial vol. 2, at 204-05.  J.T. testified that she did not remember her conversation with Nuckolls but she recalled that, at some point, she got out of her car and asked Nuckolls if she could use the rest room.  Dkt. 12-8, Tr. Trial vol. 2, at 206.  J.T. walked to the passenger side of her car, opened the car door for privacy, and urinated. Dkt. 12-8, Tr. Trial vol. 2, at 206-07.  When she was done, she walked back to the driver's side of her car, near the middle of the road, and saw Nuckolls walking from the passenger's side of his car to the middle of the road.  Dkt. 12-8, Tr. Trial vol. 2, at 207-08.  J.T. testified that when she and Nuckolls had both returned to the middle of the road, Nuckolls had his penis "out" of his pants and had an erection.  Dkt. 12-8, Tr. Trial vol. 2, at 209-10.  J.T. testified that Nuckolls "instructed [her] to touch it" and she did because he was "a man in uniform" and "[y]ou're supposed to do what they say."  Dkt. 12-8, Tr. Trial vol. 2, at 210-11.  J.T. testified that Nuckolls left shortly after a second deputy in the same uniform arrived.  Dkt. 12-8, Tr. Trial vol. 2, at 211-13.  J.T. did not report Nuckolls' actions to the second deputy or to any other officer after she was taken to jail for public intoxication because she did not think anyone would believe her.  Dkt. 12-8, Tr. Trial vol. 2, at 212-16.  After she was released from jail, J.T. told her husband about the encounter and "[h]e pretty much agreed . . . it probably wouldn't do any good to say anything."  Dkt. 12-8, Tr. Trial vol. 2, at 216.  Several months later, in October 2014, J.T. saw a news story about Nuckolls and decided to report the encounter.  Dkt. 12-8, Tr.

Trial vol. 2, at 217-20.

## III.    Additional evidence

Detective Marshall Eldridge testified that he and Corporal Kyle Hess interviewed A.A. on September 16, 2014.  Dkt. 12-9, Tr. Trial vol. 3, at 52, 56-59.  Following that interview, Eldridge and Hess drove to Nuckolls' house, told Nuckolls they were investigating a criminal incident that allegedly occurred during his shift, and asked him to come to the Sheriff's office for an interview. Dkt. 12-9, Tr. Trial vol. 3, at 60-64.  At the beginning of the videotaped interview, one detective read Nuckolls his *Miranda* rights,[4] and Nuckolls signed a written form acknowledging his rights and agreed to speak with the detectives.  Dkt. 12-9, Tr. Trial vol. 3, at 65-67.

The videotaped interview was admitted at trial, over Nuckolls's objection.  Dkt. 12-9, Tr. Trial vol. 3, at 77-78; *see* State's Exs. 1, 2A.  During the first hour of the videotaped interview, detectives confronted Nuckolls with allegations that he had inappropriate sexual contact with L.G., while she was sitting in his vehicle, and with A.A., while he searched her garage; Nuckolls denied all allegations of misconduct but admitted that he urinated by A.A.'s garage.  Dkt. 12-9, Tr. Trial vol. 3, at 85, 173-74; State's Ex. 1, 6:15-1:05:00.  Nuckolls eventually told detectives that he exposed his penis to A.A., that A.A. touched his penis, and that he touched A.A.'s breast, but he maintained that A.A. had been flirting with him, she exposed herself first, and the contact was consensual.  State's Ex. 1, at 1:06:00-1:08:31.  Nuckolls denied having inappropriate contact with L.G.  State's Ex. 1, at 1:06:00-1:08:31.  When the detectives asked Nuckolls if he had inappropriate sexual contact with any other females, Nuckolls identified instances with six women, including A.A. and a woman he encountered "down south" around 171st Street and Sheridan or Yale when he assisted Deputy Morris with a call.  State's Ex. 1, at 1:40:21-1:46:50.  Nuckolls told detectives

---

[4] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

6

that Deputy Morris left to contact the woman's relatives, that he and the woman each went behind their own vehicles to urinate, and, that after they both returned to the middle of the road, the woman asked to "see him," the woman touched him, and the woman offered him oral sex but he declined the offer.  State's Ex. 1, at 1:40:21-1:46:50.  Detective Eldridge testified that he investigated Detective Morris's arrest reports to determine that the woman "down south" that Nuckolls described in the interview was J.T., and Eldridge confirmed with Morris that Nuckolls was his assisting officer on the call with J.T.  Dkt. 12-9, Tr. Trial vol. 3, at 86-88.

Ashlee Nation testified at trial that she was engaged to Nuckolls when he was interviewed by detectives in September 2014 about his encounter with A.A.  Dkt. 12-8, Tr. Trial vol. 2, at 240-43.  Nation testified that she and Nuckolls did not discuss the sexual assault allegations while he was in jail but, after his release, Nuckolls told Nation "that he had pulled down [a woman's] dress to expose her boobs, he exposed his penis to [the woman], and he also said something about him going on the other side of the house to use the rest room."  Dkt. 12-8, Tr. Trial vol. 2, at 245-46.  He also told Nation he had "[a] sexual addiction."  Dkt. 12-8, Tr. Trial vol. 2, at 246.  A couple of months later, Nuckolls told Nation that he did not pull down the woman's dress and that the woman "had come on to him."  Dkt. 12-8, Tr. Trial, vol. 2, at 247.  Nation testified that Nuckolls later told her about an encounter with a woman during a March 2014 nighttime traffic stop.  Dkt. 12-8, Tr. Trial, vol. 2, at 248-49.  Nuckolls told Nation that "he asked [the woman] for a blow job at one point, and he exposed himself to her, exposed his penis to her.  And [the woman], I guess, gave him a hand job at one point."  Dkt. 12-8, Tr. Trial vol. 2, at 249.  Nation testified that she and Nuckolls eventually broke up and that, at the time of Nuckolls's trial, they were involved in a child custody dispute.  Dkt. 12-8, Tr. Trial. vol. 2, at 249-51.

Nuckolls testified at trial that he was involved in the March 2014 traffic stop with J.T., but

he denied exposing himself to J.T.  Dkt. 12-9, Tr. Trial vol. 3, at 134-35.  He testified he and J.T. each urinated near their respective vehicles, claimed J.T. placed her hand on his crotch over his pants, and testified she offered him oral sex but he declined.  Dkt. 12-9, Tr. Trial vol. 3, at 134-36. Nuckolls testified he intentionally touched A.A.'s breast and exposed his penis to A.A. for a sexual purpose, but he denied pulling down her dress, claimed they agreed to "simultaneously expose[]" themselves to each other, testified they "touched each other for approximately 10 to 15 second probably," and maintained that A.A. had been flirting with him throughout the entire encounter. Dkt. 12-9, Tr. Trial vol. 3, at 148-54, 170.  He also testified he pinched A.A.'s nipple, but he maintained that he did so only because A.A. asked him to do so.  Dkt. 12-9, Tr. Trial vol. 3, at 154, 202.

## IV.    Jury verdicts and sentencing

At the conclusion of the trial, the jury convicted Nuckolls of the crimes alleged in counts one and two, involving A.A., and acquitted him of the crimes alleged in counts five and six, involving J.T.  Dkt. 12-1, O.R. vol. 1, at 122-25.  The jury fixed punishment at four years' imprisonment for each conviction.  Dkt. 12-1, O.R. vol. 1, at 122, 125.  Following a sentencing hearing in November 2015, the trial court imposed the four-year sentences recommended by the jury and ordered the sentences to be served consecutively.  Dkt. 12-12, Tr. Sentencing Hr'g, at 1, 45-47.  In addition, as to each conviction, the trial court ordered a term of post-imprisonment supervision of nine months to one year.  Dkt. 12-2, O.R. vol. 2, at 2, 5.

## V.    Direct appeal

Nuckolls filed a direct appeal in the Oklahoma Court of Criminal Appeals (OCCA), raising six propositions of error.  He claimed (1) the trial court erroneously omitted a jury instruction regarding A.A's prior inconsistent statements, (2) the trial court violated his Sixth Amendment

right to confrontation by limiting his cross-examination of A.A., (3) the trial court erroneously admitted certain statements Nuckolls made during his post-arrest interview, (4) prosecutorial misconduct deprived him of a fundamentally fair trial, (5) trial counsel performed deficiently and prejudicially, in violation of his Sixth Amendment right to the effective assistance of counsel, and (6) the trial court erroneously omitted a jury instruction informing the jury that Nuckolls, if convicted, would be required to register as a sex offender.  Dkt. 11-1, Appeal Br., at 2-3.  Nuckolls requested an evidentiary hearing on the ineffective-assistance-of-trial-counsel claim alleged in proposition five so that he could present evidence outside the trial record.  Dkt. 11-4, Appl., at 2.

In an unpublished summary opinion filed June 29, 2017, in Case No. F-2015-1064, the OCCA denied proposition three on procedural grounds, finding that Nuckolls waived his claim challenging the admission of his post-arrest statements by asserting "two discrete substantive legal claims . . . addressing different aspects of the challenged evidence," in violation of Rule 3.5(A)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2017).  Dkt. 11-3, *Nuckolls v. State*, No. F-2015-1064 (Okla. Crim. App. 2017) (OCCA Op.), at 6-7.  The OCCA reviewed the non-record evidence Nuckolls submitted with his application for an evidentiary hearing and denied his application, finding that Nuckolls "fail[ed] to show by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence."  Dkt. 11-3, OCCA Op at 8-9.  The OCCA rejected propositions one, two, four, five and six on the merits, and affirmed Nuckolls's convictions and sentences.  Dkt. 11-3, OCCA Op., at 2-8, 10-14.  Nuckolls did not seek further direct review by filing a petition for writ of certiorari in the United States Supreme Court and he did not raise any additional federal claims challenging his convictions and sentences through state postconviction proceedings.  Dkt. 1, Pet., at 3.

### *DISCUSSION*

Nuckolls filed the instant federal habeas petition in May 2018, asserting the same six claims he presented to the OCCA on direct appeal and he requests an evidentiary hearing on his claims. Dkt. 1, Pet., at 5-13; Dkt. 18, Mot. for Evidentiary Hr'g, at 1.   Respondent Scott Crow filed a response (Dkt. 11) in opposition to the petition, provided records from state court proceedings (Dkts. 11, 12 13), and filed a response (Dkt. 20) in opposition to the motion for an evidentiary hearing.   Nuckolls filed replies (Dkts. 14, 21) to both responses.

**I.      Preliminary considerations**

**A.      Mootness**

The Court first considers whether Nuckolls's habeas claims are moot because the record shows that Nuckolls is no longer incarcerated and it appears that he has fully discharged his sentences.[5]  In the reply Nuckolls filed on August 13, 2018, Nuckolls stated that he had only 35 days remaining on his incarceration, and more recent address updates suggest Nuckolls is no longer in prison.   Dkt. 14, Reply, at 9; Dkt. 15, Notice, at 1; Dkt. 18, Mot. for Evidentiary Hr'g., at 1. The Court also takes judicial notice that records maintained by the Oklahoma Department of Corrections (ODOC) and made available to the public through the ODOC's website (okoffender.doc.ok.gov) reflect that Nuckolls fully discharged his sentences on September 10, 2019.

A federal court has jurisdiction to grant federal habeas relief to a petitioner only if the petitioner is "in custody pursuant to the judgment of a State court."  28 U.S.C. § 2254(a).  And the petitioner must satisfy this jurisdictional requirement when the petition is filed.   *Mays v.*

---

[5] Crow does not assert that Nuckolls's claims are moot, but "[b]ecause mootness is a matter of jurisdiction, a court may raise the issue sua sponte."  *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996).

*Dinwiddie*, 580 F.3d 1136, 1139 (10th Cir. 2009).  But Article III of the United States Constitution limits federal court jurisdiction to "actual, ongoing cases or controversies."  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).  And "Article III's case-or-controversy requirement applies at all stages of litigation," thus, "[w]hen circumstances change, extinguishing a party's interest in the case, [the case] becomes moot and is subject to dismissal."  *Romero v. Goodrich*, 480 F. App'x 489, 491 (10th Cir. 2012) (unpublished).[6]  "A habeas petitioner's release from custody is one such change in circumstance."  *Id.*  Thus, if a habeas petitioner completes his sentences and is released from state custody while the petition is pending, the petitioner must show "that 'sufficient collateral consequences flow from the underlying judgment and the completed sentence to save the [claims] from mootness.'"  *Kirby v. Janecka*, 379 F. App'x at 781, 783 (10th Cir. 2010) (unpublished) (alteration added) (quoting *United States v. Meyers*, 200 F.3d 715, 718 (10th Cir. 2000)).  But "claims challenging the underlying conviction are presumed to have sufficient collateral consequences."  *Id.* (citing *Spencer v. Kemna*, 523 U.S. 1, 8 (1998)).

Because Nuckolls was incarcerated when he filed the petition, he satisfied Article III's case-or-controversy requirement and § 2254(a)'s jurisdictional requirement.  *Spencer*, 523 U.S. at 7-8; *Mays*, 580 F.3d at 1139.  And, because each of Nuckolls's habeas claims challenge the validity of his convictions, rather than his sentences, the Court will presume the existence of sufficient collateral consequences to save his claims from mootness despite his release from custody and the completion of his sentences.  *See Kirby*, 379 F. App'x at 783 (applying presumption of collateral consequences to conclude that the petitioner's claims challenging his underlying conviction

---

[6] The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive authority.  *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

presented a "live controversy").  The Court is therefore satisfied that it has jurisdiction to adjudicate the petition.

### B.     Evidentiary hearing

Next, the Court considers Nuckolls's motion for an evidentiary hearing.  Nuckolls requests a hearing to present the following evidence to the Court:  (1) a video/audio tape of A.A. making statements to detectives that allegedly contradict A.A.'s trial testimony, and (2) "[a] Facebook Messenger conversation between" Nuckolls and L.G. that allegedly would demonstrate A.A.'s motives and bias.  Dkt. 18, Mot. for Evidentiary H'rg, at 1.

For three reasons, the Court denies the motion for an evidentiary hearing.  First, the recording of A.A.'s videotaped interview with detectives was admitted at trial, for purposes of the appellate record only, and is therefore part of the existing state-court record that the Court will review in applying § 2254(d).  Dkt. 12-10, Tr. Trial vol. 4, at 15-16; Dkt. 20, Resp. to Mot. for Evidentiary Hr'g, at 2-3.  Second, because the "Facebook Messenger conversation" is not part of the existing state-court record, the Court cannot consider that evidence unless and until Nuckolls can show, under § 2254(d), that he is entitled to de novo review of his habeas claims.  *Cullen v. Pinholster*, 563 U.S. 170, 185 & n.7 (2011); *Smith v. Aldridge*, 904 F.3d 874, 886 & n.6 (10th Cir. 2018).  Third, as discussed in the analysis section of this opinion, the Court agrees with Crow that, on the basis of the existing state-court record, § 2254(d) bars habeas relief as to all claims that the OCCA adjudicated on the merits.  For these reasons, the Court denies Nuckolls' motion for an evidentiary hearing.

## II.    Legal framework

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs review of habeas petitions and significantly limits a federal court's authority to grant federal habeas relief to

state prisoners.  First, a federal court may grant habeas relief to a prisoner in custody pursuant to a state-court judgment "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").  Second, a federal court may grant habeas relief only if the prisoner has either (1) exhausted available state-court remedies, 28 U.S.C. § 2254(b)(1)(A), by "fairly present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002), or (2) demonstrated a complete absence of available state remedies or an absence of effective state remedies, § 2254(b)(1)(B).  Third, a federal court may grant habeas relief to a state prisoner on a federal claim that was adjudicated on the merits in state court only if the prisoner first demonstrates that the state court's adjudication of that claim "resulted in a decision that" either (1) "was contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1), (2) "involved an unreasonable application of clearly established Federal law," *id.* § 2254(d)(1), or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).[7]

In addition, under the procedural-default doctrine, a federal court may grant habeas relief on "federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule"—only if the prisoner first demonstrates either cause for the procedural default and resulting prejudice or that failure to

---

[7] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

review the claim will result in a fundamental miscarriage of justice.[8]  *Davila v. Davis*, 137 S. Ct. 2058, 2064-65 (2017); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Even if a state prisoner presents a timely habeas petition, asserts only properly exhausted federal claims, and either satisfies § 2254(d)'s standards or makes the showings necessary to overcome the procedural default of his federal claims, the prisoner is not necessarily entitled to federal habeas relief.  Rather, the prisoner is merely entitled to de novo review of his federal claims. *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 898 (10th Cir. 2019); *Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014).  And, even if the federal court's independent review reveals a constitutional error, the court "must assess [the error's] prejudicial impact . . . under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness."  *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).  Under the *Brecht* standard, a federal court will grant habeas relief only if the court "is in grave doubt as to the harmlessness of an error that affects substantial rights."  *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995).

## III.  Habeas claims

As previously stated, Nuckolls seeks federal habeas relief on the same six grounds for relief he asserted on direct appeal.  He claims (1) the trial court erroneously omitted a jury instruction regarding A.A's prior inconsistent statements, (2) the trial court violated his Sixth Amendment right to confrontation by limiting his cross-examination of A.A., (3) the trial court erroneously

---

[8] A state procedural rule "is independent if it is separate and distinct from federal law" and "is adequate if it is 'strictly or regularly followed' and applied 'evenhandedly to all similar claims.'"  *Duvall v. Reynolds*, 139 F.3d 768, 796-97 (10th Cir. 1998) (quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)).

admitted certain statements Nuckolls made during his post-arrest interview, (4) prosecutorial misconduct deprived him of a fundamentally fair trial, (5) trial counsel performed deficiently and prejudicially, in violation of his Sixth Amendment right to the effective assistance of counsel, and (6) the trial court erroneously omitted a jury instruction informing the jury that Nuckolls, if convicted, would be required to register as a sex offender.  Dkt. 1, Pet., at 5-12.[9]

## A.     Omitted jury instructions (grounds one and six)

Nuckolls claims that the trial court's refusal to give two jury instructions deprived him of his right to a fair trial.  In ground one, he contends the trial court erroneously omitted a prior-inconsistent-statements instruction regarding A.A. because A.A. made statements to detectives or during the preliminary hearing that were allegedly inconsistent with statements she made at trial. Dkt. 1, Pet., at 5; Dkt. 11-1, Appeal Br., at 17-25; Dkt. 14, Reply, at 2-3.  In ground six, Nuckolls contends the trial court erroneously denied his request to instruct the jury that, if convicted, Nuckolls would be required to register as a sex offender.  Dkt. 1, Pet., at 13; Dkt. 11-1, Appeal Br., at 46-49; Dkt. 14, Reply, at 7-8.

### 1.     Additional facts

During cross-examination, defense counsel asked A.A. if she asked L.G.  "to help set [Nuckolls] up."  Dkt. 12-8, Tr. Trial vol. 2, at 112.  A.A. testified she did not and denied telling detectives that she and L.G. discussed setting him up.  Dkt. 12-8, Tr. Trial vol. 2, at 112.  After defense counsel continued with the same line of questioning, A.A. testified,

> So when [the detectives] asked about, like, if I knew that [Nuckolls] had come back at eight o'clock, I said I didn't know.  I said something along the lines of, we could be there and [Nuckolls] show up and that would prove it.  But nothing along the

---

[9] Because Nuckolls appears without counsel, the Court must liberally construe his pleadings.  *Hall v. Bellmon*, 935 F.2d, 1106, 1110 (10th Cir. 1991).  As necessary to better understand his claims, the Court will consider the arguments that were presented to the OCCA through the appeal brief that was drafted by appellate counsel.

lines of like having a full-blown conversation about let's do this on this day at this time.  No, never.

Dkt. 12-8, Tr. Trial vol. 2, at 113-14.  When pressed further, A.A. testified, "Did I have intentions of setting him up?  No.  And if it was to set him up, it would only be to prove his guilt."  Dkt. 12-8, Tr. Trial vol. 2, at 114.

During the jury instructions conference, the trial court informed the parties that it included in its packet of proposed jury instructions a "prior inconsistent statement impeachment instruction as to [A.A.]" but that it "really didn't intend to give it."  Dkt. 12-10, Tr. Trial vol. 4, at 4.  The State objected to giving the instruction, arguing that A.A. made no prior inconsistent statements. Dkt. 12-10, Tr. Trial vol. 4, at 4.  Defense counsel argued the instruction should be given because A.A. gave "at least one if not a whole bunch" of prior inconsistent statements, including the "[o]ne dealing with her statements as to whether or not, hey, we can set him up, et cetera," and suggested that he could find other prior inconsistent statements if he went "through the rest of [A.A.'s] testimony."  Dkt. 12-10, Tr. Trial vol. 4, at 4-5.  The trial court acknowledged the "one" statement A.A. made at trial about "[w]e could set him up," but disagreed with defense counsel's view that A.A. made a prior inconsistent statement about setting up Nuckolls.  Dkt. 12-10, Tr. Trial vol. 4, at 5-6.  The trial court stated,

> I do not believe in any way that there was evidence that [A.A.'s] made prior inconsistent statements.  I think quite the opposite, I think she's been extremely consistent.  And even the segments of the tape of her interview with the detectives that you showed me that you thought were the two examples of her prior inconsistency, I don't see that as inconsistent at all with what she has testified to. There may be a different version between [Nuckolls's] version and [A.A.'s] version of what happened; right?
>
> . . .
>
> That doesn't attribute a prior inconsistent—what he says happened and what she says happened is inconsistent with each other, but what she says happened has never been inconsistent with her prior statements.

Dkt. 12-10, Tr. Trial vol. 4, at 6.

Defense counsel also requested an instruction "addressing the fact if [Nuckolls] was convicted of certain crimes charged, he will by law have to register as a sex offender and then be required to abide by any law that applies to sex offenders to include those mandating places he'll not be able to live, such as near schools." Dkt. 12-10, Tr. Trial vol. 4, at 7. The trial court denied that request, noting that it had addressed the request "in previous hearings." Dkt. 12-10, Tr. Trial vol. 4, at 7-8; Dkt. 12-1, O.R. vol. 1, at 120. Specifically, the trial court considered the requested sex-offender instruction before trial when the State filed a motion in limine to bar defense counsel from discussing sex-offender registration requirements during voir dire. Dkt. 12-6, Tr. Status Conference, at 4-5. The trial court granted the State's request to prohibit questions during voir dire on the issue and indicated it did not plan to give a sex-offender instruction because "most of the other judges don't" and the registration requirements "can be a civil matter." Dkt. 12-6, Tr. Status Conference, at 4-5.

On direct appeal, Nuckolls argued that the trial court erroneously omitted the prior-inconsistent-statements instruction because A.A. made prior inconsistent statements about (1) setting up Nuckolls, (2) how long she turned away when Nuckolls announced he had to urinate as they were walking toward the garage, (3) whether or not she pulled down her dress to show Nuckolls her torso tattoo, (4) whether she told detectives she was flirting with Nuckolls and (5) whether she knew L.G. was a prostitute. Dkt. 11-1, Appeal Br., at 18-25. The OCCA found that the "challenge to the trial court's ruling based on the sole prior inconsistent statement cited during the instructions conference, i.e., A.A.'s testimony concerning 'setting up' [Nuckolls]" was preserved for appellate review, but that his "additional complaints about alleged prior inconsistent statements" that he identified "for the first time on appeal [were] waived for all but plain error

review." Dkt. 11-3, OCCA Op., at 2-3.

Regarding A.A.'s "setting up" testimony, the OCCA reasoned, "[t]he issue here is whether the record shows A.A. made a prior inconsistent statement warranting instruction with OUJI-CR 9-20," found that "A.A. sufficiently explained the challenged statements to the detectives," and concluded that "[u]nder the total record, the trial court did not abuse its discretion in finding there was no prior inconsistent statement in relation to A.A.'s testimony and in refusing to instruct with OUJI-CR 9-20." Dkt. 11-3, OCCA Op., at 3.   As to A.A.'s allegedly prior inconsistent statements that Nuckolls first identified in his appeal brief, the OCCA stated,

> [Nuckolls] fails to show plain error from omission of the OUJI-CR 9-20 instruction based on A.A.'s testimony about [Nuckolls] urinating behind her garage and [L.G.] being a prostitute.  [Nuckolls] fails to show on appeal that he questioned A.A. about those alleged inconsistencies, let alone gave her an opportunity to admit, deny or explain them.  Under Section 2613, this is fatal to these particular claims. *See Rogers v. State*, 1986 OK CR 96, ¶ 10, 721 P.2d 805, 808; Rule 3.5(A)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2017).

> [Nuckolls] too fails to show plain error from the trial court's failure to provide OUJI-CR 9-20 based on A.A.'s testimony about pulling down her dress to show [Nuckolls] her tattoo.  A.A. explained the seeming inconsistency with her preliminary hearing testimony.  Moreover, her previous statement to the detectives about pulling her dress down to show the tattoo, of course, *was* consistent with her trial testimony.  There is no plain error affecting [Nuckolls's] substantial rights.

> Finally, we fail to see any inconsistencies arising from A.A.'s trial testimony about whether she was flirting with [Nuckolls].  Because there is no error, there is no plain error.  Proposition I is denied.

Dkt. 11-3, OCCA Op., at 3-4.

As to Nuckolls's claim that the trial court erred in refusing his request for a sex-offender-registration instruction, the OCCA concluded that, under Oklahoma law, Nuckolls was not "entitled to an instruction telling the jury he would be required to register as a convicted sex offender." Dkt. 11-3, OCCA Op., at 10 (citing *Reed v. State*, 2016 OK CR 10, ¶¶ 14-19, 373 P.3d 118, 122-23).

2.      **Analysis**

Crow contends the claims asserted in grounds one and six allege only errors of state law and thus fail to present cognizable federal habeas claims.  Dkt. 11, Resp., at 11, 46.  Alternatively, Crow contends that the omission of the instructions identified in these claims did not deprive Nuckolls of a fair trial.  Dkt. 11, Resp., at 12-18, 47-48

Under clearly established federal law, "[u]nless the constitution mandates a jury instruction be given, a habeas petitioner must show that, in the context of the entire trial, the error in the instruction was so fundamentally unfair as to deny the petitioner due process." *Tiger v. Workman*, 445 F.3d 1265, 1267 (10th Cir. 2006).  The burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) (alteration added) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

For several reasons, the Court finds that Nuckolls is not entitled to federal habeas relief as to the claims asserted in grounds one and six.  First, to the extent Nuckolls merely reasserts his arguments, presented on direct appeal, that the omitted instructions were warranted under state law, the OCCA rejected his position, and this Court cannot "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Second, to the extent Nuckolls argues that the omission of the prior-inconsistent-statements instruction deprived him of his constitutional right to due process, the OCCA rejected that argument when it reviewed his claim, in part, for plain error and found the absence of the inconsistent-statements instruction did not affect Nuckolls's substantial rights.  *See Thornburg v. Mullin*, 422 F.3d 1113, 1124-25 (10th Cir. 2005) (noting that "Oklahoma's plain-error test is rooted in due process" and stating that when

the OCCA reviews a claim for plain error, a federal court "must defer to its ruling unless" the OCCA unreasonably applied the federal due-process standard within the meaning of § 2254(d)(1)). Nuckolls neither argues nor demonstrates that the OCCA unreasonably applied the federal due-process standard.  Section § 2254(d)(1) therefore bars relief as to claim one.  Third, to the extent Nuckolls alleges the OCCA unreasonably determined the facts by overlooking evidence in the record he believes supported his request for the prior-inconsistent-statements instruction, the Court finds that the OCCA's determination of the facts is objectively reasonable in light of the record developed in state court.  Appellate counsel ably presented to the OCCA those portions of the record that Nuckolls identifies A.A.'s allegedly inconsistent statements.  Dkt. 11-1, Appeal Br., at 18-25.  This Court presumes that the OCCA considered that evidence and the record as a whole in denying Nuckolls's claim and Nuckolls presents no arguments to rebut that presumption.  Fourth and finally, having reviewed the transcripts of the preliminary hearing, the transcripts of the jury trial, and A.A.'s videotaped interview, the Court cannot say that the omission of either requested jury instruction deprived Nuckolls of his constitutional rights to due process and a fair trial.  Thus, even if this Court were to review the claims asserted in grounds one and six de novo, the Court would independently conclude that Nuckolls is not entitled to habeas relief.  For these reasons, the Court denies the petition as to the claims asserted in grounds one and six.

### B.      Limitations on cross-examination of A.A. (ground two)

In ground two, Nuckolls claims that the trial court violated his Sixth Amendment right to confront the witnesses against him by limiting his cross-examination of A.A.  Dkt. 1, Pet., at 7. As he did on direct appeal, Nuckolls challenges the trial court's refusal (1) to permit him to play for the jury the videotape of A.A.'s interview with detectives and (2) to permit him to question A.A. about the contents of the civil complaint she filed in state court against Nuckolls and the

Tulsa County sheriff.  Dkt. 1, Pet., at 7; Dkt. 11-1, Appeal Br., at 26-31.  The OCCA rejected this Sixth Amendment claim on direct appeal, stating,

> As discussed in Proposition I, the trial court did not abuse its discretion in finding no prior inconsistent statement in relation to A.A.'s testimony about "setting up" [Nuckolls].  As there was no prior inconsistent statement, there was no basis to attack A.A.'s testimony by showing the videotape of her prior statement and, thus, no violation of [Nuckolls's] rights under the Confrontation Clause.

> [Nuckolls's] complaint about the trial court's refusal to allow him to confront A.A. with the contents of a civil petition filed on her behalf by an attorney against [Nuckolls] and the Tulsa County sheriff based on the charged offenses also does not reveal error.  The real issue here is whether the trial court's limits on [Nuckolls's] inquiry into A.A.'s bias violated [Nuckolls's] confrontation rights.

Dkt. 11-3, OCCA Op., at 4-5.  As to that issue, the OCCA found no Sixth Amendment violation. Citing Supreme Court precedent, the OCCA stated that the primary "purpose of confrontation is to secure for the opponent the opportunity of cross-examination," that "the exposure of a witness' motivation in testifying is a proper important function of the constitutionally protected right of cross-examination," and that even cross-examination designed to expose a witness' bias is subject to "reasonable limits."  Dkt. 11-3, OCCA Op., at 5-6 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986)).  Applying these principles, the OCCA reasoned,

> Defense counsel sought to impeach A.A.'s credibility with the contents of a civil suit which [A.A.] neither signed nor verified.  Its use had the potential to unfairly confuse the issues in the case.  More fundamentally, [Nuckolls] was able to make a record from which to argue why A.A. might have been biased, i.e., potential monetary gain arising from her recently filed civil suit against [Nuckolls] and his former employer, the Tulsa County sheriff, based on the charged offenses. Under the total circumstances presented, [Nuckolls] fails to show a Sixth Amendment violation based on the trial court's imminently reasonable limitation on A.A.'s cross-examination.  Proposition II is denied.

Dkt. 11-3, OCCA Op., at 6.

Crow contends that § 2254(d) bars relief on this claim.  Dkt. 11, Resp., at 18-23.  Nuckolls appears to argue that the OCCA's decision on this claim is objectively unreasonable because the trial court's refusal to permit him to show A.A.'s videotaped interview prevented him from

exposing A.A.'s "flagrantly inconsistent and contradicting statements" and presenting "powerful impeachment evidence," resulting in "a heinous violation of [his] Sixth Amendment right and den[ying] him a fundamentally fair trial." Dkt. 14, Reply, at 3-4.

The Court agrees with Crow that § 2254(d) bars relief.  First, it is clear from the OCCA's decision that the OCCA identified the correct legal principles governing Nuckolls's Sixth Amendment claim.  As the OCCA recognized, under clearly established federal law, a criminal defendant's right to cross-examine the witnesses against him, particularly on the issue of bias, is broad but not unlimited.  *Van Arsdall*, 475 U.S. at 679 ("[T]rial judges retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.").  Thus, Nuckolls cannot show that the OCCA's decision is contrary to clearly established federal law.  *See House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008) (describing conditions that may satisfy § 2254(d)(1)'s "contrary to" clause).  Second, while Nuckolls makes clear that he strongly disagrees with the trial court's limitations on his cross-examination of A.A., and with the OCCA's rejection of his Sixth Amendment claim, he fails to demonstrate that the OCCA either unreasonably applied *Van Arsdall*'s principles to the facts of this case or unreasonably determined the facts from the record presented in state court.  Notably, the state-court record shows that the allegedly unconstitutional limitations on Nuckolls's cross-examination of A.A. did not preclude him from exposing A.A.'s possible bias or her alleged lack of credibility.  For example, the jury learned through A.A.'s own testimony, that she had a prior misdemeanor conviction for passing a bogus check and had been placed on probation, and that she filed a civil lawsuit against Nuckolls and his former employer, seeking monetary damages, based on her encounter with Nuckolls.  Dkt. 12-8, Tr. Trial vol. 2, at 34-35, 78-79, 114-15.  A.A. also

22

testified, either on direct examination or cross-examination, about whether she spoke with detectives or anyone else about "setting up" Nuckolls, whether she had been flirting with Nuckolls before Nuckolls pulled her dress, pinched her breast and exposed his penis, whether she pulled down her own dress to expose a tattoo, and whether she knew L.G. was a prostitute. Dkt. 12-8, Tr. Trial vol. 2, at 58-67, 112-18, 142-45. In short, on the existing state-court record, Nuckolls cannot show that the OCCA unreasonably applied Supreme Court precedent or unreasonably determined the facts relevant to his Sixth Amendment claim. Because § 2254(d)(1) and (d)(2) bar relief on the Sixth Amendment claim, the Court denies the petition as to the claim asserted in ground two.

### C.      Admission of post-arrest statements (ground three)

In ground three, Nuckolls claims the trial court erroneously admitted certain statements he made during his videotaped post-arrest interview. Dkt. 1, Pet., at 8; Dkt. 11-1, Appeal Br., at 32-35. The OCCA declined to reach the merits of this claim, finding that Nuckolls waived his challenge to the admission of the evidence by presenting his claim in a manner contrary to the OCCA's procedural rules. Dkt. 11-3, OCCA Op., at 6-7.

Crow contends the procedural-default doctrine bars habeas relief as to this claim. Dkt. 11, Resp., at 23-26. As previously discussed, if the state court denies relief on a federal claim "based on an adequate and independent procedural rule" a federal court may grant habeas relief only if the prisoner first demonstrates either (1) cause for the procedural default and resulting prejudice or (2) that failure to review the claim will result in a fundamental miscarriage of justice. *Davila*, 137 S. Ct. at 2064-65; *Coleman*, 501 U.S. at 750.

In response to Crow's argument that the ground three claim is procedurally defaulted, Nuckolls does not attempt to establish cause and prejudice or to invoke the fundamental-

miscarriage-of-justice exception.  Dkt. 14, Reply, at 4.  Instead, he offers "no rebuttal to [Crow's] claim" that the claim asserted in ground three of the petition is procedurally barred.  Dkt. 14, Reply, at 4.  Because Nuckolls concedes that the procedural-default doctrine bars relief on his third claim, and the record supports that concession, the Court denies the petition as to the claim asserted in ground three.

### D.    Prosecutorial misconduct (ground four)

Next, in ground four, Nuckolls claims prosecutorial misconduct deprived him of a fair trial. He contends that, "[i]n closing arguments, the State commented on the honesty of its witnesses and depicted Nuckolls as a liar, blatantly calling his testimony a lie." Dkt. 1, Pet., at 10.  On direct appeal, Nuckolls identified the challenged remarks as including the prosecutor's (1) statement that Nation "was honest and said she wanted to do the right thing," (2) statements that A.A. and J.T. were "candid" and "honest," (3) argument that J.T. might have presented a more detailed story if she were lying and that her inability to recall more details of her encounter with Nuckolls could be "because she's telling the truth." Dkt. 11-1, Appeal Br., at 36-37.  In addition, Nuckolls argued the prosecutor "depicted [him] as a liar" by arguing (1) that the jury did not have to believe his testimony, (2) that he had "a reason to lie" because he was facing prison time, and (3) that he testified to the fact that "he was a liar" when he told the jury he had lied to his ex-wife, to his former fiancée, and to the detectives. Dkt. 11-1, Appeal Br., at 38.

The OCCA rejected the prosecutorial-misconduct claim.  Dkt. 11-3, OCCA Op., at 7-8. The OCCA first noted that Nuckolls did not object to the allegedly prejudicial remarks and found that he "therefore waived review on appeal for all but plain error." Dkt. 11-3, OCCA Op., at 7. The OCCA further noted that while Nuckolls identified "comments by the prosecutor during closing argument concerning the veracity of A.A., J.T., and [Nation]," he did "not make specific

arguments challenging these particular comments by the prosecutor" and the OCCA found that he thus "waived" this portion of his prosecutorial-misconduct claim by failing to comply with the OCCA's procedural rules. Dkt. 11-3, OCCA Op., at 7 n.2. The OCCA stated that it did, however, consider the comments on the veracity of witnesses "in conjunction with [Nuckolls's] specific claim that the prosecutor referred to him as a liar during closing argument." Dkt. 11-3, OCCA Op., at 7-8 n.2. Citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), the OCCA stated that it would "not grant relief for improper argument unless, viewed in the context of the whole trial, the statements rendered the trial fundamentally unfair, so that the jury's verdict is unreliable." Dkt. 11-3, OCCA Op., at 7. As to the prosecutor's challenged remarks about Nuckolls's credibility, the OCCA found the remarks to be "reasonable comments on the evidence" and "wholly permissible." Dkt. 11-3, OCCA Op., at 7. The OCCA thus concluded that "[t]aken individually or collectively, [the comments on Nuckolls's credibility] did not deny [him] a fundamentally fair trial in violation of due process." Dkt. 11-3, OCCA Op., at 7-8.

Nuckolls reasserts his argument from direct appeal that the prosecutor's remarks were prejudicial and he contends the OCCA's "ruling was contrary to, and an unreasonable application of, Supreme Court law, and an unreasonable determination of the facts." Dkt. 14, Reply, at 5. Crow disagrees and contends that § 2254(d) bars habeas relief. Dkt. 11, Resp., at 26-33.

In a federal habeas action, prosecutorial-misconduct claims "are reviewed only for a violation of due process." *Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005). Applying the due-process standard, the federal habeas court considers whether, on "examination of the entire proceedings," the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden*, 477 U.S. at 179-83 (considering prosecutor's challenged remarks "in context" and

in light of all surrounding circumstances).  The OCCA identified the federal-due process standard

for evaluating the prosecutorial-misconduct claim both when it cited *Darden* and when it applied

its own plain-error standard to assess Nuckolls's claim.  Dkt. 11-3, OCCA Op., at 7-8; *see*

*Thornburg*, 422 F.3d at 1124-25.  Nuckolls assertion that the OCCA's decision is contrary to

Supreme Court precedent thus finds no support in the record.  *House*, 527 F.3d at 1018.  His

assertions that the OCCA's decision rests on an unreasonable application of the due-process

standard or an unreasonable determination of the facts are similarly devoid of record support.  The

OCCA determined that the prosecutor's remarks referring to Nuckolls as an admitted liar were fair

comments on the evidence presented at trial.  And the trial transcript amply demonstrates the

reasonableness of that determination.  As the prosecutor argued, Nuckolls testified that he lied to

detectives during the first hour of his videotaped interview, that he lied because he was afraid of

losing his job, and that he lied to his ex-wife and former fiancée about sexual encounters he had

with other women.  Dkt. 12-9, Tr. Trial vol. 3, at 174-76.  Further, it was objectively reasonable

for the OCCA to determine, in the context of the entire proceeding, that the prosecutor's closing

remarks on evidence that was presented to the jury through Nuckolls's own testimony provided no

viable basis to establish a due-process violation.  On this record, the Court finds that § 2254(d)

bars habeas relief and thus denies the petition as to the claim asserted in ground four.

### E.    Ineffective assistance of trial counsel (ground five)

In his fifth and final ground for relief, Nuckolls claims trial counsel performed deficiently

and prejudicially, in violation of his Sixth Amendment right to the effective assistance of counsel,

by (1) failing to use available evidence to impeach Nation's testimony about when she and

Nuckolls broke off their engagement, (2) failing to investigate and use available evidence about

A.A.'s bogus-check misdemeanor case to impeach A.A.'s credibility, and (3) failing to object to

the prosecutor's allegedly prejudicial closing remarks.  Dkt. 1, Pet., at 12-13; Dkt. 14, Reply, at 5-7.  Nuckolls also alleges that the trial court's limitations on his cross-examination of A.A. "induced" trial counsel's ineffectiveness.  Dkt. 1, Pet., at 12-13; Dkt. 14, Reply, at 5-7.

Applying the two-part inquiry from *Strickland v. Washington*, 466 U.S. 668 (1984), the OCCA rejected Nuckolls's ineffective-assistance-of-counsel claim.  Dkt. 11-3, OCCA Op., at 8-10.  As the OCCA stated, "[t]o prevail on an ineffective assistance of counsel claim, the defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense."  Dkt. 11-3, OCCA Op., at 8; *see Strickland*, 466 U.S. at 687.  The OCCA first considered counsel's alleged ineffectiveness in failing to use non-record evidence, namely purported text messages between Nuckolls and Nation "concerning the date of their breakup."  Dkt. 11-3, OCCA Op., at 9.  The OCCA found that no evidentiary hearing was warranted because the non-record evidence did not "show by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify" that evidence.  Dkt. 11-3, OCCA Op., at 9.  As to the second part of his claim, the OCCA reasoned that Nuckolls's "complaint that trial counsel was ineffective for failing to question A.A. about the application to revoke the suspended sentence she admitted receiving for her misdemeanor bogus check conviction also does not warrant an evidentiary hearing.  [Nuckolls] ignores that defense counsel attempted to do so but the trial court disallowed the inquiry."  Dkt. 11-3, OCCA Op., at 9.  Finally, the OCCA determined that the portions of his claim resting on the existing record lacked merit.  Dkt. 11-3, OCCA Op., at 10.  The OCCA stated,

> In Proposition II, we found no error from the trial court's limitations on [Nuckolls's] cross-examination of A.A.  Defense counsel was not rendered ineffective by these reasonable court-ordered limitations.  In Proposition IV, we found the prosecutor's arguments constituted reasonable comment on the evidence and, thus, no plain error.  Similarly, trial counsel was not ineffective for failing to make meritless objections to the prosecutor's closing argument."

Dkt. 11-3, OCCA Op., at 10.

Nuckolls vigorously argues that trial counsel's performance was deficient and prejudicial. Dkt. 1, Pet., at 12-13; Dkt. 14, Reply, at 5-7.  But he effectively ignores that the OCCA rejected his assessment of trial counsel's performance.  The OCCA, as the appellate court reviewing the *Strickland* claim, was required to consider whether Nuckolls made the showings necessary to overcome the "strong presumption" that trial counsel performed reasonably under all attendant circumstances. *Strickland*, 466 U.S. at 689.  But the question for this Court is different.  On federal habeas review, "the question is not whether counsel's actions were reasonable," rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  In light of the record as a whole, and giving due deference to the OCCA's application of *Strickland*'s reasonableness standard, the Court finds that the OCCA's assessment of counsel's performance, and thus its rejection of Nuckolls's Sixth Amendment claim, was objectively unreasonable.  The Court therefore agrees with Crow that § 2254(d) bars relief and denies the petition as to the claim asserted in ground five.

## *CONCLUSION*

Because Nuckolls has not shown that his challenged convictions resulted from any constitutional errors, the Court denies his petition for writ of habeas corpus.  28 U.S.C. § 2254(a). Further, because reasonable jurists would not find this Court's determination that Nuckolls procedurally defaulted his third claim or this Court's assessment of his remaining constitutional claims debatable, the Court declines to issue a certificate of appealability.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note the substitution of Scott Crow, in place of the State of

Oklahoma or Joe Allbaugh, as party respondent.

2. The motion for evidentiary hearing (Dkt. 18) is **denied**.

3. The petition for writ of habeas corpus (Dkt. 1) is **denied**.

4. A certificate of appealability is **denied**.

5. A separate judgment shall be entered in this matter.

**DATED** this 17th day of May 2021.

TERENCE C. KERN
United States District Judge